Filed 4/5/13  P. v. Cross CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TERRENCE QUINTEN CROSS, <br><br> Defendant and Appellant. | D061591 <br><br><br> (Super. Ct. No. SCD227465) |

APPEAL from a judgment of the Superior Court of San Diego County, Charles Gill, Judge.  Affirmed.

Terrence Cross appeals from a judgment convicting him of selling and possessing cocaine base.  (Health & Saf. Code, §§ 11352, subd. (a), 11351.5.)  He contends the court erred by admitting evidence of a prior similar drug sale.  We reject this contention and affirm.

FACTUAL AND PROCEDURAL SUMMARY

Defendant's arrest arose from a "buy-walk" operation, in which undercover officers purchase drugs without immediately arresting the seller after the purchase.  This

operation permits undercover officers to preserve their true identities for continued undercover activities. Under the applicable procedures, an undercover officer will purchase drugs from a drug seller, and then walk away. Shortly after, uniformed police officers contact the suspected seller on a pretext and will obtain the seller's identity for later arrest. During this contact, the officer merely conducts a weapons patdown and does not engage in a full search.

In this case, the buy-walk undercover officer was San Diego Police Officer Joel Tien. In June 2011, Officer Tien called Eric Robertson and arranged to buy some drugs. When they met at 11th and C streets in the downtown San Diego area, Officer Tien asked Robertson to help him purchase a $20 amount of rock cocaine. Robertson agreed, and Officer Tien handed him a prerecorded $20 bill.

Officer Tien followed Robertson for a short while, and then saw Robertson speaking with a person later identified as James Morgan. Morgan led Robertson to the corner of 17th Street and Island Avenue, where defendant was standing.

Viewing the events from about 10 to 15 feet away, Officer Tien saw Morgan communicating with defendant. Officer Tien then observed defendant turn away, lift his shirt, lean over, and put his right hand towards the front of his pants. Officer Tien then saw defendant and Morgan (who were standing right next to each other) make motions as if they were exchanging something. Officer Tien saw Morgan turn around and place a white rock-like substance (later identified as rock cocaine) on a soup lid that Robertson was holding. Robertson then walked towards Officer Tien, and the officer took the cocaine from Robertson. Officer Tien also saw Robertson take out the $20 bill from

2

Robertson's pocket, hand the currency to Morgan, who then handed the money to defendant. Officer Tien saw defendant physically take hold of the money.

As Officer Tien walked away from the group, Officer Tien gave Robertson a prerecorded $5 bill in response to Robertson's request for compensation for his assistance with the drug purchase.

Shortly after, Officer Tien radioed fellow police officers, described Morgan and defendant, and asked the officers to contact these two men for later arrest. Defendant was wearing a distinctive green shirt. Police Officer Dan Stanley responded, and contacted defendant for questioning on another subject matter and confirmed his identity. The officer conducted a patdown search of defendant only on areas where defendant could be hiding a weapon. The officer did not find any prerecorded money during this limited search. Officer Stanley then released defendant. Viewing the contact from a distance, Officer Tien confirmed that Officer Stanley had detained the correct individual who had sold the drugs. Another officer searched Morgan, and did not find any prerecorded money.

Defendant was later arrested for selling the cocaine.

At trial, Officer Tien testified about the details of the transaction (as summarized above) and said he was 100 percent certain and there was "no doubt" in his mind that defendant was the person who gave the drugs to Morgan and that defendant received the $20 bill for the drugs. Officer Tien also testified as an expert witness explaining that drug dealers in this downtown area (known as the East Village) are aware of undercover police officer tactics, including the use of prerecorded money, and that sellers often use

3

third party intermediaries (known as "facilitators") to avoid being arrested. Officer Tien also described the reasons and purposes for the buy-walk operation.

Over defense objections, San Diego Police Officer Jessie Zaldivar testified (as detailed below) that while working undercover he purchased a similar amount of drugs from defendant at the same location about five years earlier.

Defendant did not testify or call any witnesses, but his counsel challenged the prosecution's case on many grounds, including claiming that Officer Tien was biased and emphasizing there was no physical evidence to show defendant's involvement in the crime.

After deliberations, the jury found defendant guilty of possessing and selling the cocaine. The court imposed a seven-year sentence, which included the lower term for the cocaine sale, doubled because of a prior strike, plus a consecutive one-year term for a prior prison term finding.

DISCUSSION

Defendant contends the court erred in permitting the prosecution to present the facts of his prior drug sale.

I. *Background Facts*

Before trial, the prosecutor requested the court's permission to introduce evidence of defendant's 2007 conviction for selling $20 worth of rock cocaine to an undercover officer on the same street corner where the current alleged drug sale took place. After extensive arguments and a motion for reconsideration, the court ruled the prosecution could present evidence of the prior sale and arrest to show defendant's knowledge of

4

undercover operations and to establish a common plan or scheme to sell drugs. However, to avoid any undue prejudice, the court refused to permit the prosecution to present evidence that defendant was convicted of the prior drug sale or that police officers found prerecorded money in defendant's sock after he was arrested for the prior offense.

Thereafter, the prosecutor called Officer Zaldivar, the undercover police officer in the prior drug sale. Before the testimony, the court instructed the jury on the limited purposes of the prior acts evidence (defendant's prior knowledge of police officer undercover tactics and defendant's use of a common scheme or plan). The court also admonished the jury that: "If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of selling cocaine base or possessing cocaine base for the purpose of sale. The People must still prove each charge and allegation beyond a reasonable doubt."

Officer Zaldivar then testified that on November 8, 2006, while working undercover, he encountered defendant on 17th Street and Island Avenue. Officer Zaldivar made a hand signal indicating he wanted to buy $20 worth of cocaine base, and asked defendant if he had any drugs to sell. Defendant responded by asking, " 'Are you a police officer?' " and after satisfying himself with Officer Zaldivar's answer, he walked south with Officer Zaldivar and reached into his pocket and asked Officer Zaldivar for money. Officer Zaldivar gave him four prerecorded $5 bills. In exchange, defendant took a rock cocaine substance out of his pocket and placed it in the officer's hand.

5

At the conclusion of the evidence in the current trial, the court repeated its earlier instruction regarding the relevance of Zaldivar's testimony. During closing arguments, both the prosecutor and defense attorney also cautioned the jury as to the limited purpose of Zaldivar's testimony. The prosecutor argued that the jury could consider the evidence to infer that defendant's common plan was to sell the cocaine because of the similarities between the prior sale and the current sale ("same quantity, $20, same controlled substance, crack cocaine, same exact street corner, 17th and Island . . .") and to show defendant's knowledge of the undercover tactics used by law enforcement officers to explain why no money was found on his person, i.e., that he quickly hid the money or transferred it shortly after the sale. But the prosecutor devoted most of his argument in discussing Officer Tien's eyewitness testimony, and emphasized that the prior drug sale evidence was only a "very small" part of the prosecution's case.

Defense counsel likewise told the jury it could not consider the prior-sale evidence to infer that "because [defendant] did it before, that he's guilty again," and reiterated that the jury was permitted to consider the evidence only "for the limited purpose of deciding whether or not [defendant] knew about the undercover tactics . . . when he allegedly acted in the case or whether [defendant] had a common plan or scheme to commit the offenses alleged."

## II. *Applicable Law*

Generally, evidence of the defendant's other crimes or misconduct is inadmissible when it is offered to show the defendant had the criminal propensity to commit the

6

charged crime.  (Evid. Code,[1] § 1101, subd. (a).)  However, prior acts evidence may be admitted when relevant to prove some other fact, such as knowledge or common plan. (§ 1101, subd. (b); see *People v. Ewoldt* (1994) 7 Cal.4th 380, 393-403 (*Ewoldt*.)  If the evidence is admissible on a proper basis, the court should conduct a section 352 balancing analysis to ensure there is no undue prejudice.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 22-23.)  " 'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.". . .' "  (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.) We review the trial court's rulings on the admission of evidence under sections 1101 and 352 for abuse of discretion.  (*Id.* at pp. 667-668.)

## III.  *Analysis*

The trial court found the evidence of defendant's prior drug sale was admissible to show the existence of a common plan or scheme and to show defendant's knowledge of undercover operations.  The court's conclusions were proper and did not constitute an abuse of discretion.  The court also did not err in refusing to exclude the evidence under section 352.

## A.  *Common Plan*

With respect to common plan, the evidence of a very similar prior drug sale at the same location supported an inference that defendant was engaged in a plan or scheme to sell drugs at this location, and therefore the current offense was part of that plan.  (See

---

[1]     All further statutory references are to the Evidence Code.

7

*Ewoldt, supra*, 7 Cal.4th at pp. 393-403.) " 'The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done.' " (*Id.* at p. 393.) In this case, defendant claimed the prosecution did not prove he participated in the drug sale. The evidence of defendant's prior drug sale was relevant to refute this defense and establish defendant's involvement in the drug transaction. The evidence supported an inference that defendant was involved in a plan to sell drugs and that the transaction with Morgan was part of this plan.

Defendant acknowledges that the California Supreme Court in *Ewoldt* held that prior misconduct evidence may be admitted to show that the defendant committed the current charged offenses "pursuant to the same design or plan defendant used to commit the uncharged misconduct." (*Ewoldt, supra*, 7 Cal.4th at p. 393.) But he argues *Ewoldt* was incorrectly decided and the admission of the evidence under this exception violates his constitutional rights. However, defendant acknowledges that this court is bound by *Ewoldt*, and states he is asserting this argument solely to preserve the argument for review by the California Supreme Court and the federal courts. We agree that we are bound by the California Supreme Court's decision (*Auto Equity Sales, Inc v. Superior Court* (1962) 57 Cal.2d 450, 455) and thus we do not further discuss this contention.

Defendant alternatively contends the court erred because the two drug sales were not sufficiently similar. A substantial similarity between the prior and the charged offense is required to prove the existence of a common scheme or plan. (*Ewoldt, supra*, 7 Cal.4th at pp. 393-403.) " '[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant

8

committed similar distinctive acts of misconduct against similar victims under similar circumstances.' " (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Ewoldt, supra*, 7 Cal.4th at p. 403.)

The court did not err in finding defendant's methodology to sell cocaine in both instances was sufficiently similar to show he employed a plan in committing the charged offense. In both instances, defendant was at the same exact location (17th Street and Island Avenue), and thus it can be inferred he was using this corner as his home base to engage in street drug sales. In addition, defendant was carrying the drugs on his person, had a $20 amount of unwrapped rock cocaine, and was wary of undercover police officers.

The fact that these elements are common to many street level drug sales does not negate the admissibility of the evidence to show a common plan or scheme. Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the logical inference that the defendant employed that plan in committing the charged offense. (*Ewoldt, supra*, 7 Cal.4th at p. 402.) The trial court found the evidence "clearly falls within the exception common plan or scheme because it's the same behavior, same location, allegedly, from the prior conviction." The court did not abuse its discretion in admitting the evidence on this basis.

9

B. *Defendant's Knowledge*

Defendant also challenges the court's admission of the prior-sale evidence to show his awareness of law enforcement undercover tactics. However, the evidence was strongly probative to show defendant's knowledge of undercover operations in the East Village area to explain why defendant sold the drugs through facilitators and why defendant did not have the prerecorded buy money on him when he was searched. The prior sale evidence helped the jury understand defendant's actions and was relevant to establish that defendant committed the crime even if he did not have the prerecorded money in his pocket shortly after the transaction and did not directly sell drugs to Officer Tien.

Defendant does not challenge that the evidence was relevant to prove these facts. Instead, he argues the evidence should not have been admitted on these grounds because the evidence was cumulative, noting that Officer Tien provided expert testimony on these same points. However, the court had a reasonable basis to conclude the evidence of defendant's specific knowledge was much stronger than, and not merely cumulative of, Officer Tien's testimony. Although Officer Tien explained the general characteristics of a street drug sale, the prosecution was entitled to present evidence to show that defendant's specific knowledge and actions were consistent with these general characteristics. The prior sale evidence was highly probative to assist in the jury's understanding of defendant's method of selling drugs through facilitators, and why the money was not found on his person shortly after the sale.

## C. *Section 352 and Prejudice*

Defendant additionally contends that even if the evidence was relevant and material on common plan and knowledge grounds, the court should have excluded the evidence under section 352. Section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

On our review of the entire record, we conclude the court did not abuse its discretion in refusing to exclude the evidence under section 352. As explained above, the prior drug sale evidence was strongly probative of a common design or plan and defendant's knowledge of undercover operations to explain his actions. On the other hand, the danger of unfair prejudice or jury confusion was limited. The prior drug sale evidence was brief and straightforward, and was not particularly egregious or likely to inflame the jury against defendant.

Defendant argues that the "inflammatory effect" of the evidence "was increased in this case because there was no evidence that appellant's uncharged act resulted in conviction or punishment." However, the trial court specifically excluded the evidence of the conviction to reduce the likelihood that the jury would improperly use the evidence to conclude that the defendant was a bad person or had a criminal disposition. Defendant cannot now change his position and argue he was unduly prejudiced because the court agreed to limit the scope of the evidence to be presented to the jury.

11

Additionally, the trial court took appropriate steps to instruct the jury on the limited uses of the evidence. Although the court did not specifically state the jury could not use the evidence to show defendant had the propensity or criminal disposition to commit the crime, the court expressly instructed the jury on the proper use of the evidence and both counsel were careful to reiterate the limited purpose of the evidence in their closing arguments. There is no reasonable probability the jurors improperly relied on defendant's prior drug sale to conclude he was a person of bad character or had a predisposition to commit the current crime.

Likewise, there is no likelihood the verdict would have been different without the prior misconduct evidence. The evidence of defendant's guilt was overwhelming. The officer who testified at trial was standing about 10 to 15 feet away when he saw defendant hand Morgan the drugs and saw defendant take the money from Morgan. The officer was 100 percent certain that defendant was the person who committed this crime. Shortly after, a police officer stopped defendant and obtained his identity. Although the prerecorded money was not found on defendant's person, only a cursory search was performed (because of the nature of the buy-walk operation) and the evidence supported that defendant was aware of the fact that undercover officers use prerecorded money and of the need to hide or quickly transfer the money after a street drug sale.

DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.